**MEIR J. WESTREICH   CSB 73133**
**Attorney at Law**
**221 East Walnut, Suite 200**
**Pasadena, California 91101**
**626.676.3585**
**meirjw@aol.com**

**Attorney for Plaintiff**

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDWARD C. ACOSTA, | Case No. |
| Plaintiff, | **COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF; AND ENFORCEMENT OF CONSENT DECREE** |
| v. | |
| CITY OF CHINO, a California Municipal Corporation; KAREN COMSTOCK, Chief of Police, in her Individual Capacity; WES SIMMONS, Chief of Police, in his Official Capacity; JAMES ANTHONY, in his individual capacity; CHRIS FARINO, in his Individual Capacity, | **JURY DEMANDED** |
| | **[42 U.S.C. §1983 &  §1988]** |
| Defendants. | |

## INTRODUCTION

This is an action at law and in equity to redress the deprivation by Defendants of Plaintiff's rights, privileges and immunities, secured by the First, Second, Fourth and Fourteenth Amendments [Due Process and Equal Protection Clauses] to the Constitution of the United States, said deprivation of Plaintiff's rights by Defendants being at all times under the color of state law, in derogation of Plaintiff's rights secured by 42 U.S.C. §1983; and for enforcement of rights under a Consent Decree filed March 18, 1987 in *Edward C. Acosta v. City of Chino, et al*, United States

District Court Case No. CV-84-0365-WDK ["Consent Decree"] arising from and following a jury verdict and a post-trial injunctive order in favor of Plaintiff Edward C. Acosta in connection with previous claims under the First and Fourteenth Amendments [Due Process Clause] to the Constitution of the United States, under the color of state law, secured by 42 U.S.C. §1983 ["First Federal Civil Rights Action"].

## COMMON ALLEGATIONS

1. The jurisdiction of this Court is invoked under 28 U.S.C. §1343, this being an action authorized by law to redress the deprivation under color of state law, statute, ordinance, regulation, custom and usage of a right, privilege or immunity secured to Plaintiff by the First, Second, Fourth and Fourteenth Amendments [Due Process and Equal Protection Clauses] to the Constitution of the United States.

2. Jurisdiction is also invoked under the Consent Decree which remains enforceable in this Court. Plaintiff requests that this Court take judicial notice of the Consent Decree, which has been filed under seal due to confidentiality clauses therein.

3. Plaintiff is EDWARD C. ACOSTA. He was formerly served with Defendant City and CPD as a peace officer, from 1974 until his retirement in good standing in 1987, as reflected by a CPD Retirement Badge and Retirement Identification Card; since approximately June 14, 1997 has held a permit to carry a concealed weapon ["CCW"] as reflected by a concealed weapon endorsement ["CCW Endorsement"]; has held security officer employment with the Chino Valley School District ["CVUSD"] [supervisory]; held reserve deputy status with City of Huron Police Department [1987-1991] and the San Bernardino County Sheriff's Department ["SBSD"] [1991 - 1995]; and has held and holds a state license as a private investigator, taking employment as a criminal defense investigator, on a court-approved appointment list.

4.   At all times pertinent to this Complaint: Defendant CITY OF CHINO ["City"] is a municipal corporation and a unit of local government duly formed and authorized under the laws of the State of California.  As part of its governing function, and pursuant to enabling provisions under the California Government Code, the City provides and administers the CHINO POLICE DEPARTMENT ["CPD"], and in accordance therewith employs persons responsible for law enforcement and the handling of (a) its officers retirement identifications and badges, and (b) issuance of concealed weapons permits for members of the public ["CCW Permits"] and concealed weapons endorsements for officer retirement identifications ["CCW Endorsements"].

5.   At all times pertinent to this Complaint until on or about June 30, 2019: Defendant and former Chief of Police KAREN COMSTOCK was duly appointed as a sworn peace officer of the State of California, employed by Defendant City as Chief of Police, with the state granted authority to issue, renew and/or revoke CCW Permits and CCW Endorsements, and to make policy in connection therewith consistent with California and United States laws governing CCW Permits and CCW Endorsements. [*See* Par. 21, *infra*]. This Individual CPD Defendant is sued in her individual capacity.

6.   At all times pertinent to this Complaint commencing on or about July 1, 2019: Defendant and current Chief of Police WES SIMMONS was duly appointed as a sworn peace officer of the State of California, employed by Defendant City as Chief of Police, with the state granted authority to issue, renew and/or revoke CCW Permits and CCW Endorsements, and to make policy in connection therewith consistent with California and United States laws governing CCW Permits and CCW Endorsements. [*See* Par. 21, *infra*]. This Individual CPD Defendant is sued in his official capacity.

7.   At all times pertinent to this Complaint until on or about June 30, 2019: Defendant and former Chief of Police JAMES ANTHONY, i.e. formerly a sworn

peace officer of the State of California and formerly employed by Defendant City as Chief of Police, was acting in concert with Defendant Comstock as her mentor and meeting with her on a weekly basis in connection with her performance of her duties as CPD chief of police. [*See* Par. 21, *infra*]. This Individual CPD Defendant is sued in his individual capacity and references herein to "Individual CPD Defendants" includes Defendant Anthony.

8.   At all times pertinent to this Complaint, Defendant Detective CHRIS FARINO was duly appointed as a sworn peace officer of the State of California, employed by the City of Glendora and its Police Department ["GPD"], and was acting in concert with the CPD Defendants.  This Individual GPD Defendant is sued in his individual capacity.

9. At all times pertinent to this Complaint: the Individual CPD Defendants and Individual GPD Defendant each acted under color of his/her official capacity, or acted in concert with another defendant who was acting under color of her official capacity; further, these CPD and GPD  Defendants each acted under color of the laws, statutes, ordinances, regulations, customs and usages of the State of California and their respective City and Police Department.

10.   At all times pertinent to this Complaint: the Individual CPD and GPD Defendants each executed the policies and customs established by ordinance, policy, regulation, directive and/or practice of  their respective City and Police Department; further, the City and/or CPD, and those officials empowered by law to make or express policy for the City and/or CPD have, by words, action and/or inaction caused and/or ratified the unlawful acts of the Individual CPD Defendants and each of them.

11.   At all times pertinent to this Complaint: the Individual CPD Defendants Comstock and Simmons were each, during her/his tenure as Chief of Police, a person whose acts or edicts constitute official policy for the City and/or CPD – *i.e.* he/she was/is an official policymaker.

12.  At all times pertinent to this Complaint: the Individual CPD Defendants Comstock and Simmons were each acting under color of her/his representative/official capacity; further, said Individual Defendants were each at all times acting within the course and scope of her/his employment and agency by Defendant City and/or CPD, and further acting as authorized agents for the City and CPD, or was acting in concert with Individual CPD Defendant Anthony.

13.  At all times pertinent to this Complaint: Defendant City and its CPD authorized and/or caused each of the Individual CPD Defendants to take the actions he/she took in respect to Plaintiff; and each of the Individual CPD Defendant authorized and/or caused the  Defendant City and/or CPD to take the actions taken in respect to Plaintiff.

14.  At all times pertinent to this Complaint: each Individual CPD and GPD Defendant, and one or more other persons, conspired with each other, and/or were acting in concert with each other, and who at relevant times herein acted under color of their respective official capacities, under color of the statutes, ordinances, regulations, customs and usages of the State of California and/or their respective City and Police Department.

15.  At all times pertinent to this Complaint: each Individual CPD Defendants and the Individual GPD Defendant and other co-conspirator(s) were acting as agents, employees and/or principals of each other; and Defendant City is liable by *respondeat superior* for all of the acts of the Individual CPD Defendants, except as limited by law governing 42 U.S.C. §1983 for the City and CPD.

16.  The Individual Defendants and other as yet unknown individual(s), separately and in concert, conspired to engage and engaged in the illegal conduct here mentioned, or joined the conspiracy of others, to the injury of Plaintiff of the rights, privileges and immunities secured to Plaintiff by the First, Second, Fourth and Fourteenth Amendments to the Constitution of the United States, and the laws of the

United States and the State of California.  One or more of said conspirators acted in furtherance of said conspiracy.

17. The Individual Defendant and other as yet unknown individual(s), separately and in concert, conspired to engage and engaged in the illegal conduct here mentioned, or joined the conspiracy of others, to the injury of Plaintiff of the rights, privileges and immunities secured to Plaintiff by the Constitution and laws of the State of California, thereby denying Plaintiff his petition rights, the right to be free of unreasonable police action, due process of law and the equal protection of the laws of the State of California, rights secured to Plaintiff by the Fourteenth Amendment to the Constitution of the United States.  One or more of said conspirators acted in furtherance of said conspiracy.

18. At all times pertinent to this Complaint:  The  Defendants, and each of them, knew or should have known that the wrongs here mentioned involving Plaintiff were about to be committed; and further the Defendants each had the power to prevent or aid in preventing the commission of the same.  Despite this, said Defendants refused and/or failed to prevent or aid in preventing the commission of said wrongs, and said wrongs were in fact committed, denying Plaintiff his rights secured under the First, Second, Fourth and Fourteenth Amendments to the Constitution.

19. Each of the Defendants participated in and/or caused the unlawful conduct mentioned herein, or acted in concert with a Defendant who participated in and/or caused the unlawful conduct mentioned herein.

20. Each of the Defendants herein knew or should have known that the wrongs here mentioned were being or about to be committed, whether by another defendant, or by public and/or police officers acting in his/her official or individual capacity, and further had the power to prevent or aid in preventing the commission of the same or the injuries and damages arising therefrom.  Despite this, said Defendants each deliberately refused and/or failed to prevent or aid in the preventing the commission

of said wrongs or infliction of said damages, and said wrongs were in fact committed and damages suffered, denying Plaintiff his rights secured under the First, Second, Fourth and Fourteenth Amendments to the Constitution of the United States.

21. Currently, and at relevant times after 1987, various provisions of the United States Constitution, federal statutes and state statutes provide protections for the rights of retired peace officers to carry concealed weapons ["CCW Rights"]. Except as mentioned in Pars. 19( c) & 34, *infra*, references in this paragraph and hereinafter to *California PenalCode* §§12027 *et seq*. covers the period from January 1, 2008, when that statutory scheme was amended to add the mandatory and due process provisions hereinafter referenced, until December 31, 2010, when it was reorganized, amended and superseded by *California PenalCode* §§25450 *et seq*. and *California PenalCode* §§26300 *et seq*.

a. Generally applicable provisions of the Second Amendment and its individual right to bar arms apply equally to retired peace officers.

b. Federal law also establishes a minimum baseline of CCW Rights for state and local retired peace officers and the rights afforded under state law. *See* 18 U.S.C. §926C.

c. California law provides for certain retirement protections for, and for that purpose defines, eligible retired local and state peace officers. *See California Penal Code* §§830.1, 830.2, 830.5; *California PenalCode* §12027(a)(1)(A)-( C). The content of an officer retirement identification card is specified. *See California PenalCode* §§12027(a)(1)(A), 12027(a)(1)(D); *California PenalCode* §25460( c).

d. California state laws secure the CCW Rights of retired police officers by mandating issuance of a CCW permit or endorsement on retirement cards ["CCW Endorsement"] for police officers of a specified type, who meet standards for peace officer retirement and who had the right to bear concealed weapons when on active duty – *i.e.* prior to retirement, *see California PenalCode* §§830.1, 830.2, 830.5; *California PenalCode* §25455; *California PenalCode* §26300(d);  and exempting

them from the penal code provisions barring carrying of concealed weapons, *see California PenalCode* §§12027(a)(1)(A), 12027(a)(2), 12027(a)(3); *California PenalCode* §§25400, 25450.

e.  Under the aforementioned California state law mandates for CCW Rights of retired peace officers – *e.g.* the mandate for a CCW Endorsement on their retirement identification cards if they meet the aforementioned criteria – the sole exception to the mandate is if the officer retired with a psychological disability. *See California PenalCode* §26305(a).

f.  Under the federal and California state codes governing CCW Endorsements on officer retirement identification cards, retired officers must apply for renewal every five years for CCW Rights within California, *see California PenalCode* §§12027(a)(1); *California PenalCode* §25465; *California PenalCode* §25915; and every year for CCW Rights which apply nationwide, *see* 18 U.S.C. §926C.

g.  Equating revocation with non-renewal [California state laws terms], and the latter with disqualification [federal law term], federal and California state statutes mandate that revocation, non-renewal and/or disqualification of CCW Rights [CCW Endorsements] of retired police officers require a showing of good cause. *See* 18 U.S.C. §926C(d); *California PenalCode* §§12027(a)(2); *California PenalCode* §§25455, 25470; *California PenalCode* §§26305(d), 26315(d), 26320.

h.  Federal constitutional law under the Fourteenth Amendment due process clause defines the required property interest as being created *inter alia* by state or local legal requirements for showing good cause as a condition for revocation or non-renewal; and a required liberty interest as being created by any form of deprivation of a fundamental right, *e.g.* the Second Amendment right to bear arms.

i.  California state law defines what constitutes a showing of good cause for revocation, non-renewal or disqualification in connection with CCW Endorsements on police officer retirement identification cards, defining it as grounds,

if proved, for arrest, suspension or removal of an on-duty police officer. *See California PenalCode* §26305(b).

j. For the determination of whether good cause is shown for revocation, non-renewal or disqualification in connection with CCW Endorsements on police officer retirement identification cards, California state law specifies the requirements for a hearing, with specified notice, joint hearing officer selection, and other procedural protections ["Due Process Hearing"]. *See California PenalCode* §25975; *California PenalCode* §§26315(a), 26320(a). These Due Process Hearing protections also provide that surrender of the police officer retirement card with the CCW Endorsement is required only after completion of the hearing with a finding of the requisite good cause, *see California PenalCode* §26325(a); and immediate temporary revocation is permitted only if and when public safety is compromised by retention of the CCW Endorsement pending hearing, *see California PenalCode* §§26305( c), 26312.

k. Due Process Hearing protections under California state law are functionally similar to those mandated under the Fourteenth Amendment Due Process Clause for deprivation of property and/or liberty interests with some additional procedures.

l. These California state and federal protections of the CCW Rights of retired peace officers also reflect an intent to afford necessary protection for officers whose life and safety, as well as that of their families, may be at risk from their prior public service; and the security that is entailed by the mere holding of the CCW Endorsement, and the lack thereof in its absence.

22. In 1987, federal and California state laws governing individual constitutional rights to bear arms under the Second Amendment and statutory recognition or protection of CCW Rights of retired peace officers, were materially different from current provisions.

a.  In 1987, there were no federally secured and recognized individual constitutional rights to bear arms under the Second Amendment or otherwise, and no federal statutory recognition or protection of CCW Rights of retired peace officers.

b.  In 1987, there were no California state laws securing any individual right of retired peace officers to bear arms, nor to have a CCW Endorsement on their peace officer retirement identification cards, separate and apart from the general standards for all persons to acquire CCW Rights.

c.  In 1987, California county sheriffs and municipal police chiefs had complete discretion as to whether to afford a CCW Endorsement on peace officer retirement identification cards. *See California PenalCode* §27027 [in its 1987 form & content].

23.  Currently, and at all relevant times herein, CPD policy under the Chino Police Department Policy Manual, Policy No. 220 ["CPD Policy No. 220"], has provided and currently provides for revocations and non-renewals of retired officer CCW endorsements.

a.  CPD Policy No. 220 purports to provide "guidelines for issuance, denial, suspension or revocation" of retired CPD officer CCW Endorsements in accordance with specified relevant federal and state laws governing same, as set forth in Paragraph 21, *supra* ["Federal and State Retired Officer CCW Laws"] [CPD Policy No. 220.1].

b.  CPD Policy No. 220 contravenes Federal and State Retired Officer CCW Laws by providing that the requisite good cause for revocation or denial is "as determined by the Department [CPD]" [CPD Policy No. 220.6], rather than as provided by federal and/or state law [*see* Paragraph 21.i, *supra*]; and that the only due process afforded is a "review by the Chief of Police" whose "decision . . . is final" upon "request" of the "former officer" [CPD Policy No. 220.6], rather than as provided by federal and/or state law [*see* Paragraph 21.j-k, *supra*];

c. CPD Policy No. 220 contravenes Federal and State Retired Officer CCW Laws by providing that the requisite good cause for immediate  suspension pending "review" is "as determined by the Department [CPD]" [CPD Policy No. 220.6] plus any "employee having reason to suspect a retiree's conduct has compromised public safety" [CPD Policy No. 220.6.1], rather than as provided by federal and/or state law [*see* Paragraph 21.i, *supra*]; and that the only due process afforded is a "written notice" of the revocation and suspension and the available police chief review, with attached copies of  *California PenalCode* §26305, §26312 & 26315  [CPD Policy No. 220.6.1], rather than as provided by federal and/or state law [*see* Paragraph 21.j-k, *supra*], including "attached" specified California code provisions.

**CLAIM NO. 1**
**CLAIM FOR DEPRIVATION OF FOURTH AMENDMENT RIGHTS**
**[42 U.S.C. §1983; Fourth Amendment]**
**[Chris Farino]**

24.   Paragraphs 1-23 are incorporated herein by this reference.

25.   On November 14, 2017, Plaintiff was engaged in his duties as a state superior court appointed defense investigator, acting under the supervision of the court-appointed criminal defense attorney for a criminal felony defendant ["Underlying Criminal Case"].

26.   On November 14, 2017, in pursuit of his duties, Plaintiff responded to a residential address in Glendora, California, to interview a 15-year old witness who was identified in a police report in the Underlying Criminal Case, without any address ["Criminal Case Witness"].

27.   Plaintiff obtained the address of the Criminal Case Witness by lawful, standard investigative means.

28.   Greeted at the front door by the mother of the Criminal Case Witness, Plaintiff gained permission by declaring and showing his name, and his status as licensed private investigator, retired police detective and a court appointed private

defense investigator, including showing *inter alia* his CPD police retirement identification.

29. There is an automated video-audio record of Plaintiff's encounter with the mother of the Criminal Case Witness. A copy thereof obtained by Plaintiff from CPD has been corrupted. It is unknown whether the original has been corrupted.

30. Inside the home, Plaintiff completed his interview of the Criminal Case Witness. The interview encounter was professional, cooperative and courteous at all times.

31. After the investigative interview was completed, and because the Criminal Case Witness had indicated a desire to be a police officer, Plaintiff gratuitously shared some of his personal perspectives on the police profession in a conversation that was fully completed and remained amicable at all times, at which time Plaintiff departed with friendly conclusory comments by all concerned.

32. Early in Plaintiff's encounter with the Criminal Case Witness, he was asked to allow his identification to be photographed, which Plaintiff permitted.

33. Also during Plaintiff's encounter with the Criminal Case Witness, Plaintiff was asked whether he had a firearm; and Plaintiff responded by showing his CPD CCW license / endorsement. The interaction remained amicable at all times until Plaintiff's departure.

34. On or about December 13, 2017, GPD Defendant Farino contacted CPD Lt. and Watch Commander Kevin Mensen and stated that GPD was "investigating an incident involving [Plaintiff] Acosta impersonating a peace officer . . . using his retired Chino PD badge and identification card." In said call, GPD Defendant Farino recited the supporting allegations as fact, without disclosing that GPD had possession of a photograph of the aforementioned identification card which represented Plaintiff as "retired" and an audio-videotape of the encounter at the door; and also declared his intent to provide his crime report to the district attorney for consideration for a criminal filing of impersonating a peace officer.

35. On or about December 21, 2017, Plaintiff was contacted by telephone by GPD Defendant Farino, who inquired as to how Plaintiff had identified himself in the interview encounter with the Criminal Case Witness. It was amicably concluded and no mention of the matter was ever made in the Underlying Criminal Case, through its conclusion, so Plaintiff assumed the matter was concluded.

36. Unknown to Plaintiff, on or about December 29, 2017, GPD Defendant Farino filed a crime report, having previously contacted CPD and falsely accused Plaintiff of gaining entry to the home of the Criminal Case Witness by falsely describing himself as a police officer, and informing them of his intent to refer the matter to the Office of District Attorney for criminal prosecution.

37. GPD Defendant Farino in fact made the aforementioned referral, having also promised to keep CPD informed of progress in the matter.

38. GPD Defendant Farino apparently faxed his Crime Report to CPD on or about January 9, 2018.

39. Plaintiff is informed and believes that GPD Defendant Farino never raised the matter with the prosecutor involved in the Underlying Criminal Case; and the matter was never raised with defense counsel or the court involved therein.

40. At no time did GPD Defendant Farino have probable cause that Plaintiff had committed a crime, including the alleged crime of impersonating an officer; and he intentionally or with reckless disregard for the truth alleged facts to CPD Defendants and the district attorney which he knew to be untrue, or which involved intentional material omissions.

41. Plaintiff is informed and believes that the aforementioned reporting actions of GPD Defendant Farino, and his election to pursue criminal charges instead of resorting to the prosecutor in the Underlying Criminal Case, were motivated in whole or in substantial part by his animus against Plaintiff because: (a) Plaintiff, a former police officer was working as a criminal defense investigator; and (b) Plaintiff had independently obtained the address of the witness in the Underlying Criminal Case

which was not contained in his police crime report, without seeking it via discovery from the prosecutor.

42.  On or about October 15, 2018 the case "disposition" was "cleared" based on a criminal filing rejection by the district attorney and Plaintiff is informed and believes that CPD Defendants were concurrently so notified.

43.  The false report by GPD Defendant Farino, left as is with its false accusation of a serious felony by Plaintiff, poses a potential threat to Plaintiff's alternative CCW License.

44.  At all relevant times herein, Defendant Farino acted with malice and reckless disregard for the Fourth and Fourteenth Amendment rights, under the laws of the United States, entitling Plaintiff punitive damages from Defendant Farino.

**CLAIM NO. 2**
**CLAIM RE PRIOR FEDERAL CONSENT DECREE**
**AND FIRST AMENDMENT RETALIATION**
**[Consent Decree; 42 U.S.C. §1983; First Amendment]**
**[City of Chino, Karen Comstock, James Anthony, Wes Simmons]**

45.  Paragraphs 1-44 are incorporated herein by this reference.

46. Plaintiff, a police officer formerly employed by Defendant City and CPD, was previously a Plaintiff in the First Federal Civil Rights Action against Defendant City and/or CPD, and a prior Chief of Police James Anthony, *i.e.* Individual CPD Defendant Anthony herein  ["Individual Defendant Anthony"], arising from said employment.  In 1980, Plaintiff served at the rank of corporal and in the capacity of homicide detective.

47. Plaintiff was investigating a gang homicide and in so doing agreed to meet with a suspect in his attorney's office.  Plaintiff was familiar with the defense attorney in that capacity and a previous capacity as a deputy district attorney, employed by the Office of District Attorney, County of San Bernardino.  By agreement, Plaintiff was to take a statement from the suspect and then take him into custody as a voluntary

surrender; and Plaintiff promised that his report would include a complete recitation of the suspect's statement, including his assertions of self-defense.

48.   Plaintiff took the suspect's statement in his attorney's office; took the suspect into custody; and completed a homicide police report which included his admission to having committed the homicide and assertions of self-defense based on the claim that the suspect was attempting to leave a Chino area criminal gang, was threatened with death by another gang member, and preemptively killed that gang member.  Plaintiff did not endorse the self-defense claim, but did note that he had previously heard rumors that the suspect was attempting to quit the gang.

49.   After completing and filing within CPD the homicide report, Plaintiff left for vacation, during which time a supervisor noted and objected to the inclusion of the self-defense assertions; transferred the case to another detective; ordered the second detective to remove the self-defense content; and then signed supervisory approval and filed the report, still containing the signature of Plaintiff and the date of his report, as if still authored solely by Plaintiff in its current incarnation.

50.   Plaintiff later learned of and complained of the alteration of his report up through the entire CPD chain of command, objecting to both (a) illegal exclusion and consequential denial of exculpatory information for the defense; (b) apparent failure of a peace officer to comply with the promise by which he obtained a confession too commission of the homicide; and ( c) filing and submission in CPD files and in criminal discovery of a falsified version of the homicide report as if signed and filed by himself.  His complaints were unavailing.

51.   Plaintiff next submitted his complaints to several layers of authority within the prosecuting agency, the Office of District Attorney for San Bernardino, from the assigned prosecutor to the highest rank within that courthouse area.   His complaints were again unavailing.

52.   Under subpoena to testify at the scheduled preliminary hearing and expecting questions re the false police report with his name on it, Plaintiff then

submitted the deleted exculpatory information, which also complied with the agreement re obtaining the confession, to the suspect's then current attorney [Assistant Public Defender], and then the municipal court hearing the matter.

53. Defendant Anthony then terminated Plaintiff on a charge of insubordination, for having submitted the information to the suspect's then current attorney, the Public Defender, and then the court.

54. Plaintiff then filed a federal civil rights action, which went to trial wherein a verdict was entered in favor of Plaintiff with a damage award. Injunctive relief was still pending before the Court, for reinstatement and correction of his record.

55. Plaintiff and the Defendants then settled most of the action, in which *inter alia* Plaintiff was reinstated and deemed to have had continuous service to an effective date of February 25, 1987, with a damages payment and ability to acquire from the retirement system the restoration of retirement service benefits; an agreed reference was established and placed in his personnel file for multiple purposes; Plaintiff immediately voluntarily resigned; and City and CPD records were required to initially show that Plaintiff resigned with deferred retirement.

56. The settlement was approved by the Court and filed as a Consent Decree; except that there was a reservation to the Court to decide on the merits, based on the record of the trial, the fully disputed issue as to whether Plaintiff would receive a CPD Retirement Badge and CPD Retirement Identification Card executed by Police Chief Anthony, but with the understanding that the CPD Retirement Identification Card would not then contain a CCW Endorsement; nor would then Police Chief Defendant Anthony otherwise issue to Plaintiff a CCW Permit.

57. The aforementioned reservations were based on the personal animus of Defendant Anthony and his resentment over Plaintiff having successfully litigated the First Federal Civil Rights Action,, in an exercise of his First Amendment petition rights to vindicate his Fourteenth Amendment due process rights.

58. On March 18, 1987, the Consent Decree was filed:

a. Plaintiff was reinstated and deemed to have had continuous service to that date in 1987, with a damages payment and ability to acquire from the retirement system the restoration of retirement service benefits; an agreed reference was established and placed in his personnel file for multiple purposes; Plaintiff immediately voluntarily resigned;

b. The Court ordered Police Chief Anthony to issue to Plaintiff, within sixty (60) days, a CPD Retirement Badge and CPD Retirement Identification Card, without a CCW Endorsement;

c. Provisions were added to preclude the ability of Defendants therein to sabotage Plaintiff's ability to obtain law enforcement employment and/or CCW Rights from other police agencies; and

d. City and CPD records reflect that Plaintiff resigned without any reference to his deferred or other retirement.

59. In accordance with the Court's Order, Police Chief Anthony issued to Plaintiff a CPD Retirement Badge and CPD Retirement Identification Card, without a CCW Endorsement. City records have not been adjusted to reflect this.

60. Plaintiff's judicial rehabilitation enabled him to obtain employment as a school senior security officer for CVUSD; obtain a CCW rights via appointment as a reserve officer with the City or Huron Police Department [1987-1991] and the SBSD [1991-1995]; and obtain court-appointed private employment as a criminal defense investigator.

61. Plaintiff's CPD Retirement Identification Card, without a CCW Endorsement, was good and valid until his death and did not need to be renewed.

62. The Consent Decree expressly affirmed Plaintiff's right to display and show his CPD Retirement Identification Card; and imposed "reference" controls to prevent the City or CPD from interfering with Plaintiff's ability to obtain law enforcement duties and/or CCW Rights from any other source.

63. The Consent Decree did not prohibit Plaintiff from later seeking a CCW Endorsement on his CPD Retirement Identification Card; nor dictate the outcome of any later new application, even if it were to be interpreted as arguably permitting an outcome unfavorable to Plaintiff.

64. The above circumstances of Plaintiff's termination, litigation and reinstatement terms were well publicized and known throughout the City and CPD communities, at the time of their occurrence and continuing into the subsequent period of Plaintiff's law enforcement duties in the Chino area, as above described.

65. When Defendant Anthony left CPD in 1992, he left behind him an extended and bitter history of costly civil rights litigations, in which his policies and practices were key to the problems.

66. After Defendant Anthony had departed CPD in 1992, and in light of Plaintiff's law enforcement CVUSD security services 1987-1995 involving numerous positive professional interactions with CPD officers, Plaintiff applied for and received – from a subsequent CPD Chief of Police – approval a CCW Endorsement on his CPD Retirement Identification Card, effective on or about June 14, 1997. This meant issuance of a new CPD Retirement Identification Card with the CCW Endorsement, with this new card good for five years and then subject to renewal for sequential five year periods. [*See* Par. 21(f), *supra*].

67. Plaintiff's CPD Retirement Identification Card with the CCW Endorsement was applied for and renewed approximately two times for five year terms [at least 2002 and 2007]. During this period, Plaintiff was also issued a special commemorative badge only issued to officers – current and retired – in good standing with CPD [2000].

68. Also occurring during this period was a tectonic shift in the laws governing gun rights in general and retried officer gun rights in particular, commencing in 2008, when the courts defined the Second Amendment as securing a right to bear arms for

all persons, which was shortly thereafter extended to the states under the selective incorporation doctrine of the Fourteenth Amendment.

69.   Thereafter, California state law and federal laws were then amended to modify the CCW Rights of retired peace officers to accommodate current Second Amendment jurisprudence, including provisions which made provision of a CCW Endorsement mandatory, and requirements of specified due process protections for denial, revocation and/or non-renewal thereof, for *inter alia* all law California police departments. [*See* Par. 21(f), *supra*].

70.   A federal law adopted in 2004and amended in 2010 and 2013 [*see* Par. 21(f), *supra*] extended to retired peace officers, more recently holders of state or local issued CCW Endorsements under current Second Amendment jurisprudence, the right to carry concealed weapons throughout the United States. [*See* Par. 21(f), *supra*].

71.   The new Second Amendment jurisprudence and the federal and California state enactments / amendments in 2004 - 2013 expressly purported to apply to all retired peace officers, past, present and future – *i.e.* express retroactive application. [*See* Par. 21(f), *supra*].

72.   At the time of each of the developments in Second Amendment jurisprudence and the federal and California state enactments / amendments in 2004 - 2013,  Plaintiff held a CCW Endorsement that complied with pre-existing law.

73.   Plaintiff was and is a person whose fundamental constitutional rights were guaranteed under the new Second Amendment jurisprudence and the federal and California state amendments to accommodate same for retired peace officers.

74.   Nothing in the Consent Decree can or does preclude Plaintiff's Second Amendment and Fourteenth Amendment [Due Process] constitutional rights – substantive and procedural – as established in the years since 1987.

75.   Under the federal law enactment and amendments in 2004, 2010 and 2013 [*see* Par. 21(f), *supra*], Plaintiff eventually received a new CPD Retirement Identification Card with the CCW Endorsement which enabled use of the CCW in all

states [in or about October 2012]. This CPD Retirement Identification Card with the CCW Endorsement was/is good only for a one year term, requiring annual renewal. [*See* Par. 21(f), *supra*].

76. Plaintiff thereafter applied for and received, every year, a newly renewed CPD Retirement Identification Card with the CCW Endorsement, for a one year term, with the latest one ending in October 2018.

77. Nothing in the Consent Decree can or did preclude any Chino Chief of Police who succeeded Defendant Anthony as chief of police from issuing to Plaintiff the CCW Endorsements which Plaintiff received continuously since after Defendant Anthony's departure from CPD.

78. Once the CCW Endorsements were obtained as specified in the preceding Pars. 75-77, nothing in the Consent Decree can or does obviate the Second Amendment and Fourteenth Amendment [both Property and Liberty Interests] constitutional rights that attached thereto by operation of law upon issuance and/or renewal. *See also* Claim No. 6 [Fourteenth Amendment Equal Protection Clause], *infra*.

79. Nothing in any of the federal and state amendments purport to provide any exclusion for any parties situated as Plaintiff was at time of enactment, even though there were specific provisions addressing its retroactive application to other classes of retired peace officers whose CCW Rights were embraced by the texts of new enactments. *See* 18 USC §926C. *See also California PenalCode* §§25455, 25460; *California PenalCode* §26300.

80. At no time has Plaintiff knowingly and voluntarily waived any of the Second Amendment and Fourteenth Amendment [both Property and Liberty Interests] constitutional rights specified in the preceding Pars. 21 and Pars. 75-88 in a form or content required for waivers of such rights.

COMPLAINT

20

81.  A waiver of a fundamental constitutional right cannot be inferred from a contractual agreement that precedes the creation or establishment of the right; nor can there be a general prospective waiver of future unknown constitutional rights.

82.  There has never been any suggestion of Plaintiff's misuse or abuse of his CCW Permit, or of any weapon employed by Plaintiff.

83.  In a letter of April 3, 2018 from Defendant Chief Comstock to Plaintiff ["Comstock Letter"] – mailed on or after April 9, 2018 and received by Plaintiff on April 13, 2018 – Defendant Chief Comstock charged Plaintiff with using his CPD Retirement Badge and Identification Card to obtain entry to a private residence by falsely portraying himself as an active duty peace officer ["Misconduct Charge"], and referenced CPD Policy No. 220.

84.  The Misconduct Charge was presented as substantiated with an anonymous accusation of unknown time, place, location, persons involved, etc.  No copy was provided of CPD Policy No. 220, the GPD Crime Report by Defendant Farino [12.29.17],  the CPD Incident Report by CPD Lt. Mensen [01.09.18], or *California PenalCode* §26305, §26312 & 26315.  Plaintiff could not then respond to such an unspecified charge and the offer of the opportunity to do so was an empty process, and repeated efforts to secure disclosure/production thereof were refused by CPD Defendants.

85.  The Comstock Letter also alleged that the CPD Retirement Identification Card with the CCW Endorsement then and now held by Plaintiff was issued in error, relying on the Consent Decree text which provided that the CPD Retirement Identification Card to be issued at that time would be without the CCW Endorsement ["Consent Decree Violation Charge"].

86.  The Comstock Letter then "revoked" Plaintiff's CPD Retirement Identification Card with the CCW Endorsement, stating as the grounds the two matters referenced in Pars. 57 & 58, *supra*.

87.  The Comstock Letter then offered to "review" the revocation if Plaintiff would seek same by April 19, 2018; and invited Plaintiff to submit by that date any information for the review.

88.  The Comstock Letter did not then purport to "suspend" Plaintiff's CPD Retirement Identification Card with the CCW Endorsement, or the CCW Endorsement, or to make the revocation thereof immediately effective.

89.  The Comstock Letter did not conform to any of the federal or state procedural rules and requirements, and due process of law, governing revocation or non-renewal of a CCW Endorsement of a qualified retired police officer; and affirmatively violated the law by *inter alia* offering only a review by the Police Chief, and not a hearing before appropriate hearing officers, and failing to provide minimally adequate discovery or other due process of law. [*See* Par. 21(j), *supra*].

90.  In a responsive letter of April 18, 2018, delivered to Defendant Chief Comstock on the same date, Plaintiff *inter alia* denied the charges, demanded more adequate notice and a due process hearing as required by law, and requested discovery of the factual and legal basis for each charge and material allegation, and of the revocation; and of all of the portions of the Chino Police Manual cited in the April 3, 2018 Letter.

91.  In a further April 23, 2018 letter from Defendant Chief Comstock [via her counsel], Chief Comstock then purported to claim that the ostensible and asserted "issuance in error" of the CPD Retirement Identification Card with the CCW Endorsement entitled CPD to demand its return without any due process or other procedural requirements normally attendant to a revocation; and demanded its return by April 30, 2018, and threatened litigation under the Consent Decree [and potential prevailing party attorney fees] to retrieve it if not returned.  All requests for more adequate notice, discovery and a hearing were ignored at that time.

92.  Defendants at that time affirmatively and unquestionably refused to afford due process of law and denied any obligation to do so in connection with the

"revocation" in Defendant Chief Comstock's letter of April 3, 2018, and her counsel's letter of April 23, 2018.

93. It was also manifestly clear that CPD Defendants would refuse to renew Plaintiff's CCW Endorsement when it comes due for renewal in October 2018 and refuse to afford any form of due process of law, notwithstanding the fact that current federal and state law treat non-renewals and revocations as exactly the same for due process requirements. In subsequent communications, CPD Defendants made it explicit that they intended the revocation notice to (a) also signify their intent not to renew in October 2018, and they in fact then refused to allow Plaintiff to perform his annual shooting range qualification that is a condition to renewal, based on the revocation/non-renewal; and (b) be an immediately effective suspension / revocation.

94. There is no statute, legal regulation, rule of law or other basis in law on which a revocation or non-renewal of a CCW Endorsement may be based on an asserted self-serving claim by the issuer that it was issued in error in the first instance; or that such claimed basis for revocation exempts the issuer from compliance with mandated due process in doing so – *e.g.* adequate notice, full discovery, proper hearing, and showing of good cause. In fact, such asserted basis is inadequate as a matter of law for any of those conclusions.

95. There is no constitutional rule of law or other basis in constitutional law on which a revocation or non-renewal of a permit in which Plaintiff holds a Property Interest and/or Liberty Interest may be based on an asserted self-serving claim by the issuer that it was issued in error in the first instance; or that such claimed basis for revocation exempts the issuer from compliance with mandated due process in doing so – *e.g.* adequate notice, full discovery, proper hearing, and showing of good cause. In fact, such asserted basis is inadequate as a matter of law for any of those conclusions.

96. Defendants have violated and are violating the 1987 Consent Decree by:

a.  Purporting to revoke Plaintiff's CCW Endorsement based on the alleged display by Plaintiff of his CPD Retirement Identification Card, given that the 1987 Consent Decree entitled him to do so; and

b.  Failing to correctly reflect in his City Personnel file the fact of his deferred retirement, as specified in the settlement portion of the Consent Decree, and his actual retirement shortly thereafter, ordered in the adjudication element of the Consent Decree.

97.  As a proximate result of said violations of the Consent Decree, Plaintiff is damaged in an amount to be proved at trial, in that he is now chilled in his rightful use of the CPD Retirement Identification Card and concomitant damage and injury to his professional duties as a private investigator and criminal defense investigator; and his records do not accurately reflect his retirement status.

98.  Plaintiff incurred, and continues to incur, economic injuries, damages and expenses, lost business opportunities, and other consequential damages, past, present and future, all of which were caused by the aforementioned acts and omissions of Defendant Chief Comstock and other agents of the City and CPD, in an amount to be proved at trial.

99.  Hence, Plaintiff has been deprived of his rights under the Consent Decree and incorporated settlement agreement and is entitled to either or both: (a) an order compelling compliance with the Consent Decree; and/or (b) recovery of his damages at least until compliance.

100.  Plaintiff has partially mitigated his damages / injuries by obtaining a federal CCW License, without waiving any of his rights hereunder.

101.  Plaintiff also sought to mitigate his damages / injuries by conditionally agreeing to a belated offer by CPD Defendants – after the revocation, suspension and denial were effective – to afford a hearing before a 3-member panel jointly selected pursuant to *California Penal Code* §26320.

102.   The due process conditions to the aforementioned agreement were *inter alia* that: (a) agreement be reached for the persons to serve on the hearing panel; and (b) the hearing process include all other due process constitutionally required, *e.g.* (i) notice of the charges specifically supporting revocation, suspension and/or denial; (ii) notice of the evidence on which the revocation, suspension and/or denial were based, including production of documents and things on which the decision(s) relied; and (ii) a hearing which includes rules of evidence and a reasonable opportunity to challenge CPD evidence, and to present Plaintiff's evidence, and access to process to compel attendance of witnesses  and/or production of documents and things.

103.   Another condition to the aforementioned agreement was that the hearing would not determine Plaintiff's rights under the Consent Decree, which would remain subject to judicial determination as therein provided.

104.   The parties were unable to agree on a selection process for the 3-member hearing panel; and CPD Defendants refused to agree to any of the other due process or other conditions specified by Plaintiff, or did so in one aspect that was so limited as to render it meaningless.  CPD Defendants in fact refused to agree on any form or content of procedural framework or notice.

105.   Plaintiff filed a further federal action in this district against the City Defendant and  CPD Individual Defendant Comstock, in *Edward C. Acosta v. City of Chino, et al*, United States District Court, Case No. 5:18-cv-00914-DSF-KK ["Second Federal Civil Rights Action"].  That action was stayed on grounds that the revocation of Plaintiff's CCW Endorsement without due process was not yet final and hence his claims for relief, in particular for injunctive relief, were not yet ripe, pending an administrative hearing before a panel selected under *California Penal Code* §26320.

106.   The hearing never occurred, for reasons explained above at Paragraphs 101-105 and the Second Federal Civil Rights Action remains stayed.  However, in informal discovery mandated in meet and confer efforts by counsel for a case

management conference, CPD Defendants produced the CPD Incident Report and Chino Police No. 220 [02.04.19] and thereafter compelled production of the GPD Report and items referenced therein [02.21.19] [collectively "CPD Document Production"]. This belated production did not obviate the remaining due process deficiencies.

107. During public announcements concurrently with the retirement of Defendant Chief Comstock in June 2019, Chief Comstock publicly reported her relationship with Defendant Anthony, which was the first notice to Plaintiff of the latter's involvement with the former, as alleged herein.

108. Plaintiff is informed and believes that the acts and conduct of Defendant Chief Comstock were motivated and driven in substantial part by her mentor Defendant Anthony and his active encouragement, who in turn was motivated by his continuing grudge and desire to retaliate against Plaintiff for his exercise of his First Amendment and Fourteenth Amendment due process rights in the First Federal Civil Rights Action.

109. At all relevant times herein, Defendant Chief Comstock and Defendant Anthony acted with malice and reckless disregard for the federal statutory and regulatory rights, under the laws of the United States, entitling Plaintiff punitive damages from Chief Comstock.

110. Defendant City is liable for the acts and omissions of Defendant Chief Comstock in that Chief Comstock is one whose acts or edicts represent the City in the matter of CPD Retirement Identifications and Badges of retired peace officers; and the acts and omissions as alleged herein are the policies of the City and CPD.

**CLAIM NO. 3**
**CLAIM FOR VIOLATION OF FEDERAL STATUTORY**
**CCW RIGHTS OF RETIRED PEACE OFFICERS**
**[42 U.S.C. §1983; 18 U.S.C. §926C]**
**[City of Chino, Karen Comstock, Wes Simmons]**

111. Paragraphs 1-110 are incorporated herein by this reference.

112. Under federal statutory protections for CCW rights of retired peace officers [*See* Para. 21(g),21(j), *supra*], those rights can only be deprived on a showing of good cause to do so, after a prescribed hearing process.

113. There is no factual basis to establish good cause to revoke Plaintiff's federal statutory CCW Rights.

114. Defendants failed and refused to provide requisite procedural protections for the deprivation of federal statutory CCW Rights; initially failed and refused to comply with those procedural protections prescribed by federal and state law governing revocation and non-renewal of CCW Rights of retired peace officers; and after the filing if this action offered to only partially comply with federal constitutional and statutory provisions for due process of law.

115. Moreover, Defendants refused to renew Plaintiff's CCW Endorsement when it came due for renewal in October 2018 and refused to afford any form of due process of law, notwithstanding the fact that current federal and state law treat non-renewals and revocations as exactly the same for due process requirements. *See also* Claim No. 6, *infra*.

116. As a proximate result of said violations, Plaintiff was damaged in an amount to be proved at trial, in that he was chilled in his rightful use of the CPD Retirement Identification Card and/or its CCW Rights and concomitant damage and injury to his professional duties as a private investigator and criminal defense investigator.

117. Plaintiff incurred, and continues to incur, economic injuries, damages and expenses, lost business opportunities, and other consequential damages, past, present and future, all of which were caused by the aforementioned acts and omissions of Defendant Chief Comstock, Defendant Anthony and other officials of the City and CPD, in an amount to be proved at trial.

118. Hence, Plaintiff has been deprived of his substantive and due process rights under 18 U.S.C. §926C and is entitled to either or both: (a) an order compelling

the required compliance with 18 U.S.C. §926C or providing same in this District Court; and/or (b) recovery of his damages until restoration of his CCW Rights, only partially mitigated by Plaintiff obtaining an alternative CCW License.

119.  At all relevant times herein, Defendant Chief Comstock and Defendant Anthony acted with malice and reckless disregard for the federal statutory and regulatory rights, under the laws of the United States, entitling Plaintiff to punitive damages from Chief Comstock.

120. Defendant City is liable for the acts and omissions of Defendant Chief Comstock in that Chief Comstock is one whose acts or edicts represent the City in the matter of CCW Rights of retired peace officers; and the acts and omissions as alleged herein are the policies of the City and CPD.

**CLAIM NO. 4**
**CLAIM FOR VIOLATION OF FEDERAL SECOND AMENDMENT RIGHTS OF RETIRED PEACE OFFICERS**
**[42 U.S.C. §1983; SECOND AMENDMENT]**
**[City of Chino, Karen Comstock, Wes Simmons]**

121.  Paragraphs 1-120 are incorporated herein by this reference.

122.  Federal statutory protection and state statutory protections for CCW rights of retired peace officers [*see* Par. 21(b),21(g), *supra*] are statutory definitions and implementations of Second Amendment rights of retired peace officers.

123.  There is no factual basis to establish good cause to revoke Plaintiff's Second Amendment rights.

124.  Defendants failed and refused to provide requisite procedural protections for the deprivation of Second Amendment Rights; and have failed and refused to comply with those procedural protections prescribed by state law governing revocation and non-renewal of CCW Rights of retired peace officers.  Moreover, CPD Defendants refused to renew Plaintiff's CCW Endorsement when it came due for renewal in October 2018 and refused to afford any form of due process of law,

notwithstanding the fact that current state law treats non-renewals and revocations as exactly the same for due process requirements.

125.   As a proximate result of said violations, Plaintiff is damaged in an amount to be proved at trial, in that he is now chilled in his rightful exercise of his Second Amendment rights and concomitant damage and injury to his professional duties as a private investigator and criminal defense investigator.

126.  Plaintiff incurred, and continues to incur, economic injuries, damages and expenses, lost business opportunities, and other consequential damages, past, present and future, all of which were caused by the aforementioned acts and omissions of Defendant Chief Comstock, in an amount to be proved at trial.

127.   Hence, Plaintiff has been deprived of his rights under the Second Amendment and is entitled to either or both: (a) an order compelling restoration or maintenance of his CCW Rights; and/or (b) recovery of his damages at least until securing the aforementioned order.

128.  At all relevant times herein, Defendant Chief Comstock acted with malice and reckless disregard for the federal constitutional and statutory rights, under the laws and Constitution of the United States, entitling Plaintiff to punitive damages from Chief Comstock.

129. Defendant City is liable for the acts and omissions of Defendant Chief Comstock in that Chief Comstock is one whose acts or edicts represent the City in the matter of CCW Rights of retired peace officers; and the acts and omissions as alleged herein are the policies of the City and CPD.

**CLAIM NO. 5**
**CLAIM FOR VIOLATION OF FEDERAL FOURTEENTH AMENDMENT DUE PROCESS RIGHTS OF RETIRED PEACE OFFICERS**
**[42 U.S.C. §1983; Fourteenth Amendment**
**[City of Chino, Karen Comstock, Wes Simmons]**

130.   Paragraphs 1-129 are incorporated herein by this reference.

131.   Federal statutory protections and state statutory protections for CCW rights of retired peace officers, including *inter alia* the good cause requirement for

revocation or non-renewal [*see* Par. 21(b), 21(g), *supra*], define a constitutionally protected property interest of peace officers in the CCW rights of retired peace officers.

132.   Federal statutory protections and state statutory protections for CCW rights of retired peace officers [*see* Par. 21(b),21(g), *supra*], including *inter alia* the good cause requirement for revocation or non-renewal, define a constitutionally protected liberty interest of peace officers in the CCW rights of retired peace officers.

133.   Defendants failed to provide requisite procedural protections for the deprivation of Plaintiff's property interests in his CCW Rights; and have refused to comply with those procedural protections prescribed by federal and state law governing revocation and non-renewal of CCW Rights of retired peace officers.

134.   Defendants failed to provide requisite procedural protections for the deprivation of Plaintiff's liberty interests in his CCW Rights; and have refused to comply with those procedural protections prescribed by federal and state law governing revocation and non-renewal of CCW Rights of retired peace officers.

135.   There was/is no factual basis to establish good cause to revoke Plaintiff's property interest in the CCW rights of retired peace officers.

136.   CPD Defendants failed and refused to provide requisite procedural protections for the deprivation of federal statutory CCW Rights; initially failed and refused to comply with those procedural protections prescribed by federal and state law governing revocation and non-renewal of CCW Rights of retired peace officers; and after the filing of the Second Federal Civil Rights Action offered to only partially comply with federal constitutional and statutory provisions for due process of law.

137.   Specifically, CPD Defendants refused notice and/or discovery in connection with the Misconduct Charge, *i.e.* identify the accusing police agency and/or alleged "victims"; provide information re involved statements and actions involved; provide names of witnesses or copies of witness statements; provide copies or even identify tapes and/or photographs; provide copies of referenced CPD

regulations, and/or related regulations governing CCW endorsements, police officer retirement certifications, and due process, or afford Plaintiff the means to obtain same by process or otherwise [collectively, "Notice and Discovery" or "Notice and Discovery Requirements"]. Some of these were provided belatedly in February 2019 in discovery in the Second Federal Civil Rights Action.

138. CPD Defendants also gave repeatedly vague and conflicting statements of the nature of the action being taken, i.e. whether the revocation was effective immediately or only after "review" by the Chief of Police; whether the revocation was accompanied by an immediate suspension; and whether and when s denial of renewal was to occur or thereafter occurred. When Plaintiff sought clarifications by a proper statement of charges, this was refused by CPD Defendants.

139. As a proximate result of said violations, Plaintiff is damaged in an amount to be proved at trial, in that he was chilled in his rightful use of his property interests in his CCW Rights as a retired peace officer, and concomitant damage and injury to his professional duties as a private investigator and criminal defense investigator.

140. As a proximate result of said violations, Plaintiff is damaged in an amount to be proved at trial, in that he is now chilled in his rightful exercise of his liberty interests in his CCW Rights as a retired peace officer, and concomitant damage and injury to his professional duties as a private investigator and criminal defense investigator.

141. Plaintiff incurred, and continues to incur, economic injuries, damages and expenses, lost business opportunities, and other consequential damages, past, present and future, all of which were caused by the aforementioned acts and omissions of Defendants, in an amount to be proved at trial.

142. Hence, Plaintiff has been deprived of his due process rights under the Fourteenth Amendment and is entitled to either or both: (a) an order compelling the

required due process or providing same in this District Court; and/or (b) recovery of his damages at least until securing the due process hearing.

143. At all relevant times herein, Defendant Chief Comstock acted with malice and reckless disregard for the federal constitutional and statutory rights, under the laws and Constitution of the United States, entitling Plaintiff to punitive damages from Chief Comstock.

144. Defendant City is liable for the acts and omissions of Defendant Chief Comstock in that Chief Comstock is one whose acts or edicts represent the City in the matter of due process rights and procedural protections in connection with revocations and non-renewals of CCW Rights of retired peace officers; and the acts and omissions as alleged herein are the policies of the City and CPD.

**CLAIM NO. 6**
**CLAIM FOR VIOLATION OF FEDERAL FOURTEENTH AMENDMENT EQUAL PROTECTION RIGHTS OF RETIRED PEACE OFFICERS**
**[42 U.S.C. §1983; Fourteenth Amendment]**
**[City of Chino, Karen Comstock, Wes Simmons]**

145. Paragraphs 1-144 are incorporated herein by this reference.

146. Until April 3, 2018, Defendants treated Plaintiff's CCW Rights in a manner that conformed with all applicable federal and California state constitutional and statutory laws governing the class of retired peace officers and their Second Amendment and Fourteenth Amendment Due Process [Property and Liberty Interests] as created and established in 2004 - 2013.

147. In the Comstock Letters, Defendants are defining a class of retired peace officers – including Plaintiff – for whom Defendants do not afford CCW Rights in a manner that conforms with all applicable federal and California state constitutional and statutory laws governing the general class of retired peace officers defined in the preceding Paragraph 146.

148. The differential treatment between the two classes defined in Pars. 146 and 147 is arbitrary and capricious, and does not satisfy the rational basis test under the Fourteenth Amendment Equal Protection Clause.

150. The differential treatment between the two classes defined in Pars. 146 and 147 involved a fundamental liberty under the Second Amendment, and does not satisfy the strict scrutiny / suspect classification test under the Fourteenth Amendment Equal Protection Clause.

151. Hence, Plaintiff has been deprived of his equal protection rights under the Fourteenth Amendment.

152. As a proximate result of said violations, Plaintiff is damaged in an amount to be proved at trial, in that he is now deprived of equal protection of the laws in connection with his CCW Rights as a retired peace officer, and concomitant damage and injury to his professional duties as a private investigator and criminal defense investigator.

153. Plaintiff incurred, and continues to incur, economic injuries, damages and expenses, lost business opportunities, and other consequential damages, past, present and future, all of which were caused by the aforementioned acts and omissions of Defendant Chief Comstock, in an amount to be proved at trial.

154. At all relevant times herein, Defendant Chief Comstock acted with malice and reckless disregard for the federal constitutional and statutory rights, under the laws and Constitution of the United States, entitling Plaintiff to punitive damages from Chief Comstock.

155. Defendant City is liable for the acts and omissions of Defendant Chief Comstock in that Chief Comstock is one whose acts or edicts represent the City in the matter of equal treatment under the law in connection with revocations and non-renewals of CCW Rights of retired peace officers; and the acts and omissions as alleged herein are the policies of the City and CPD.

**CLAIM NO. 7**
**EQUITABLE RELIEF**
**INJUNCTIVE RELIEF; DECLARATORY RELIEF**
**[CONSENT DECREE; 42 U.S.C. §1983]**
**[City of Chino, Karen Comstock, Wes Simmons]**

156. Paragraphs 1-155 are incorporated herein by this reference.

157.  Plaintiff is entitled to orders declaring the respective rights of the parties under the Consent Decree [Settlement Agreement].

158.  Plaintiff is entitled to orders declaring the conduct, whether by acts omissions, of Defendants, and each of them, are each and all unlawful, in each and all of the particulars described in Claims Nos. 1-5.

159.  Plaintiff is entitled to orders enjoining the unlawful conduct, whether by acts omissions, of Defendants, and each of them, to remedy each and all of the particulars described in Claims Nos. 1-5 and the consequences thereof, including temporary, preliminary and injunctive relief.

160.  Plaintiff is being irreparably harmed by the unlawful conduct, whether by acts omissions, of Defendants, and each of them, as  described in Claims Nos. 1-5, and will continue to be so harmed unless and until the requested declaratory and/or injunctive relief is granted as prayed.

161.  Defendant CPD Chief Simmons is now the person against whom, in his official capacity, equitable relief must be directed.

## ATTORNEY FEES
### [CONSENT DECREE; 42 U.S.C. §1988]

162.  Plaintiff is entitled to and hereby seeks prevailing party attorney fees under the Consent Decree and 42 U.S.C. §1988 for Claim No. 2.

163.  Plaintiff is entitled to and hereby seeks prevailing party attorney fees under 42 U.S.C. §1988 for Claim Nos. 1, 3-7.

## PRAYER

**WHEREFORE,** Plaintiffs seek judgment against defendants jointly and severally, except as specifically indicated, for:

1.  Compensatory damages, according to proof;

2.  Special consequential damages, including but not limited to economic damages, financial losses, damage to business and economic opportunities, attorneys' fees, legal costs, and other as yet undetermined damages, according to proof;

3.  Punitive damages from Defendant Chief Comstock, of $500,000; and from Defendant Chris Farino, of $100,000.

4.  Declaratory relief as prayed herein, and as may appear necessary and proper;

5.  Temporary, preliminary and permanent injunctive relief as prayed herein, and as may appear necessary and proper;

6.  Reasonable attorneys' fees and costs of suit pursuant to contract and statute under 42 U.S.C. §1988; and

7.  For such further relief as the Court may deem necessary and proper.

Dated: April 10, 2020

/s/ Meir J. Westreich

_____
Meir J. Westreich
Attorney for Plaintiff

Plaintiff demands trial by jury.

Dated: April 10, 2020

/s/ Meir J. Westreich

_____
Meir J. Westreich
Attorney for Plaintiff

COMPLAINT

35